2746 Zitronix Corporation v. KLA Zitronix is here today asking this court to reverse the summary judgment disposing of its Walker process cause of action. If you don't mind, I would really prefer that you start with jurisdiction because if we don't have jurisdiction, then everything you're wanting to talk about is probably not relevant for our court. So could you start with jurisdiction? And in particular, I was really genuinely surprised that neither of the briefs addressed the recent Supreme Court case of Gunn v. Minton, which has to do with patent cases and the rising under language particularly. Instead, you all rely on a bunch of earlier Federal Circuit cases that support the idea of jurisdiction to some extent, but I don't know how after the Supreme Court's recent decision, those decisions could still control our resolution of jurisdiction in this case. So I'm hoping that you're familiar with Gunn v. Minton. Yes, Your Honor, I am. Okay. Can you please tell me why this case doesn't sort of fit squarely under the rhetoric of Gunn v. Minton and require us to move it over? I think it would be the Fifth Circuit if I'm right. Would it be the Fifth Circuit? It would be the Fifth Circuit. Okay. The reason that Gunn v. Minton would not require a transfer is that the Walker process claim is differentiated from the malpractice claim that is set forth in the Gunn v. Minton case. Okay. And this court has traditionally recognized that in a case involving a Walker process cause of action, a substantial question of the cause of action, separate apart from the legal malpractice cause of action, which may involve a patent type of a claim, in a Walker process cause of action, it is necessary and is always a substantial question to determine a question of patent law, which invokes 1295 jurisdiction uniquely, whereas it wouldn't do so under Gunn v. Minton. I don't understand. Gunn v. Minton is malpractice, and the malpractice was predicated in part on Walker process. Here, it's a Sherman Act Section 2 or Clayton Act, I think, Section 4 violation that's predicated on Walker process. I'm not sure that I understand the distinction. Certainly, if this case, for example, required me to resolve the validity of the claims at issue, which can be an important component, but I don't have to because the patentee disclaimed all of the claims whose validity would be suspect in light of the prior adjudication. Right? Do I have the facts correct? That's technically not correct, Your Honor, and that's an important point. Not all of the elements and not all of the claims of the patent were, in fact, disclaimed. They disclaimed claim 1, 3, and several other ones. They did not disclaim claim 2, 7, etc. Yes, but I'm not resolving anything with regard to Walker process with regard to the claims that were not disclaimed. Well, Your Honor, with respect to the allegations that Zitronics made in support of jurisdiction and in support of its Walker process claim, if we go to page 54 of the appendix at paragraph 111, we're talking about the totality of the prosecution of the 260 patent and not just the prosecution of the claims that were ultimately disclaimed. I really don't think I totally understand. It is certainly true that a finding of inequitable conduct renders the entire patent unenforceable, but this seems like a pretty simple case in that. I don't mean simple from a Walker process standpoint, to be clear, but I mean simple in that you had a bunch of claims that were invalidated by a jury. You had a continuation pending at the PTO and the examiner allowed, in some cases, verbatim identical claims. In other cases, what cannot reasonably be argued as anything other than broader claims than that which was invalidated. Those are the claims you've disclaimed here, it seems to me. Well, they disclaimed certain claims that were broader. They've maintained other ones that are identical. They've maintained other ones that were broadened as well. The point is that for purposes of distinguishing our case from Gunn v. Minton, we're in a position where the question of patent law does invoke this court's exclusive jurisdiction under Noble Pharma and under In Re Cipro and other cases, which I don't think, in that regard, were affected by the Gunn v. Minton analysis. I think that the jurisdiction that we have is independent. This court's jurisdiction over the claims that we've asserted, given the scope, and if this court's concern is with the scope of the disclaimer, then that should... I don't have any concern with the scope of the disclaimer because inequitable conduct renders the whole patent invalid. So it wouldn't matter if they disclaim one claim or all but one claim. Either way, a finding of fraud in the patent office, which is a more potent determination than simply inequitable conduct, would render the entire patent unenforceable. So it seems to me that nothing that is going to be resolved in this case requires me to decide any specific issues that affect the future validity of any individual claim because they all stand or fall together here and there is an admission of basically invalidity by virtue of the disclaimer. I understand, Your Honor, and this will help clarify it. With respect to the Walker process cause of action that we're talking about now, it's helpful to... I'm going to set Gunn v. Minton aside for a second. Let's just talk about the Walker process claim that we have here and the conduct that we have alleged here. The conduct uniquely affects questions of patent law because it uniquely affects what is legitimate conduct that can be undertaken by a party in the prosecution of a patent. But that's every Walker process claim. Sir, every Walker process claim is a question of whether or not during prosecution somebody didn't disclose something they should have or made a misstatement and therefore secured a patent that they really ought not to have had rights to. Okay. The difference is, Your Honor, it's not... You're right. Every Walker process claim involves some sort of conduct that renders a patent, constitutes some sort of fraud on the PTO. The question that is unique here is what will this court that has jurisdiction over patent law tolerate with respect to conduct that is undertaken before the PTO versus what will the Fifth Circuit tolerate before the PTO? But what makes the difference about what conduct will it tolerate for exclusive jurisdiction? I mean, it sounds to me like you're arguing all Walker process cases have to come here because they involve fraud on the patent office. Well, the... Is that what you're arguing? Well, traditionally, the case law has said that all cases, and then the question that comes up under Minton... You mean our case law, but our case law is not particularly definitive about that, I think. And there are certainly Walker process cases in the regional circuits, are there not? There are Walker process cases in the regional circuit, but this... And they've said that we don't have exclusive jurisdiction. So you're basically urging us to create a circuit conflict. No, Your Honor. And the distinction, if we go to like the Lipitor case, for example, which involved a variety of different Walker process causes of action... A variety of different causes of action that involved Walker process theories and involved other independent theories by which the antitrust claim that was asserted in connection with the Walker process claim can be sustained, then you're right. That would be a Third Circuit case or a Second Circuit case. But to the extent that there's a single sole claim that is a Walker process claim, Lipitor and the other cases have said that the jurisdiction vests with this court because it raises a question of arising under federal... That doesn't... I don't understand that at all. Okay, okay. If there are patent antitrust claims that involve this court's jurisdiction and non-patent antitrust claims, wouldn't the patent stuff be enough to get it here? Well, that's what the patent claim would get it here, okay? But if there were, say, five causes of action, one involved a Walker process claim, the other involved other antitrust claims, the other antitrust claim... And the summary judgment was rendered on a non-Walker process... So you're going back to basically saying as long as it's a Walker process antitrust claim, the exclusive jurisdiction is here. If it solely raises a Walker process... I don't see how that's consistent with gun movement. And no, neither does the solely make sense to me because if we have jurisdiction over the Walker process claim, then we would have supplemental jurisdiction over all of the other claims, right? I mean, isn't that the way it works? Your Honor, this court would have jurisdiction over claims that were... It would apply the regional circuit law to other cases. But the point is, for purposes of invoking 1295, if there were multiple grounds, and that's the... Well, but 1295 expressly implicates an act of Congress in the patent law space. And you've both been unequivocal that this is a Section 2 Sherman Act and a Section 4 Clayton Act claim. I didn't see the citation of any patent statute anywhere below or here. Well, and that's because if you look at the well-pleaded complaint, the well-pleaded complaint invokes a question of patent law separate and independent of an act of Congress. And if the act of Congress invokes a need to address patent law, and that's why I went back to the remedy and what will be tolerated in terms of what happens with respect to the conduct before the PTO. I do want to ask you, just quickly, a couple of factual questions, which go to the merits. You're not going to have time to present your own merits argument, but I do have a few specific questions. When the notice of allowance came, it was afterwards there was a request for continued examination, and that's when the judgment was provided. Correct. Was there any explanation given with the judgment that would explain this judgment results in invalidation of claims that are similar to the claims at issue from a parent application? Was there any explanation given along with it? I don't think that there was, Your Honor. And there was also prior art attached at the exact same time. Was it buried? How much prior art? How many? Tell me where precisely I can find the list of everything that was given. Is it just one final? I'm wondering. Look, one of two things happened here. Either the examiner behaved in a slightly irresponsible fashion, didn't look into the final judgment. Now, mind you, the final judgment just says invalid and the patent and the claim numbers. It doesn't give the details. It doesn't demonstrate on its face that the claims that were, in fact, invalidated are identical in some respects to the ones pending for that examiner. But still, the examiner should have had the responsibility of going behind and looking. So one of two things happened. Either the examiner just checked the box saying he looked at it but didn't, because clearly you can't allow claims that are identical to ones that have just been invalidated. Or alternatively, as Judge Sparks colorfully put it, knew that the final judgment was identical and just didn't care. It's a very strange approach. And you will not see any use of the word egomaniacal in my writings. But he's more colorful, perhaps, than I am. So in any event, so what really happened? May I take the second prong? Because you have perfectly framed what happened with the examiner. And I think that either scenario demonstrates the consequences of the Walker process fraud that we've alleged. The record will bear out that the 260 patent that was the subject of the later prosecution is identical to the 440. No, we know. It's a continuation. It's a continuation. We're not done. Keep moving. But the bottom line is that when they filed the notice of the final judgment, you know, asking to have the 260 set aside, they did so for the purpose of allowing them the opportunity to- I know. They wanted to get in and get it blessed. I know how the world works. What I'm asking you, though, let me be more specific, was it buried? I know when they submitted the judgment, they also submitted additional prior art at the same time. And then the examiner went off on a lark and rejected the claims under some additional prior art and completely seemed oblivious to the judgment. So I'm wondering, how much stuff was submitted? Where in the record can I find this submission, this request for continued examination, so that I could understand what it looked like to that examiner? Well, you're right. I can't say that it was buried within, you know, 10,000 pages, for example, on some of the other cases. What I can say, though, is that when we go to the- No, how many? I'm asking a specific question. Where can I find the submission where this judgment was given to the PTO and how many other pieces of prior art were given to the PTO at the exact same time when the request for continued examination was made? Okay, at the exact same time as the final submission? I don't think that there were any when the final judgment was given. I think that there were other prior art given at an earlier time, and I will find that during- I will find an answer to that for- Or maybe opposing counsel can have that ready. All right. I'll restore some of your rebuttal time. Okay, well, the bottom line is that- No, you don't have any more time. Sit down. Thank you, ma'am. Some more. May it please the Court, if I may start with Judge Moore's final question to my counterpart. The RCE submission in which the final judgment and the final judgment order was provided to the Patent Office appears in the appendix at pages 448- sorry, 382 to 432, if I'm not mistaken. And was it provided alone? Correct. That IDS included the final judgment, Judge Sparks' final judgment order, both of Zitronix's JMOL letter briefs, and one JMOL letter brief filed by KLA to the district court, and that was all that was submitted with the RCE. Wait, I'm looking on page 381. It looks like a new supplemental IDS, unless I'm mistaken. Is that right? Why don't you open yours to 381 so you can see? Yes, I'm looking. So it's not just- looks like there's a bunch of references too, right? 21 through 34? I assume this is a supplemental IDS. I assume the initial IDS had references 1 through 20, and this supplemental IDS added 21 to 34? No, that's not quite correct, Your Honor. If you look at the IDS on page 381, you can see that that IDS was signed and considered on January 31, 2011, which was when the PTO considered the jury verdict and the terminal disclaimer. It was actually after this IDS that the PTO allowed the claims on February 7, 2011, and that notice of allowance appears in Appendix 377. So where is the IDS with the final judgment then? That's on 382? Yes, Your Honor. All right. And the only things submitted on that were related to that final judgment. There's the final judgment, the order, and then the briefs with respect to that final judgment order. And in that regard, there could be no argument that the information was buried. To the extent Your Honor raised the concern that perhaps- Well, I mean, no argument that it was buried, but something seriously went wrong because there's no universe in which an examiner can allow claims that were literally just rejected identically word for word as invalid. So something went wrong in the prosecution on the PTO's end. I think to the extent Your Honor- Do you believe that an examiner has the power to allow in a continuation application claims that have just been word for word invalidated by a jury and found final judgment on? Perhaps. Really? So- Without so much as acknowledging any of it or talking about it? Perhaps they can? How is it that the examiner- I mean, the PTO's going to love you. How in the world does the examiner have the authority to allow claims that are identical on a continuation application? So the spec is the same. Priority date's the same. How? So, taking Your Honor's assumption that the claims- Which are the facts of the case? I would dispute that the claims are identical. Now, whether that difference is enough to confer patentability over the 441 patent claims on the merits, I think is a different question than what's before the court. Okay, we'll assume that they're identical from a hypothetical then. Go ahead. Assuming they are identical, then I would agree that those claims should be held invalid. But they weren't. Correct, Your Honor, they were not. And Mr.- I mean, how did- I thought you said that the examiner could have the power to do that, but how could they if they were identical? I understand if they're not identical, then there may be some wiggle room. So- But isn't it the case if there's a district court judge ruling that's become final of invalidity, they're invalid? That's correct. That's what Blundertung said. Blundertung and the Supreme Court said that if a patent is held invalid by an Article III court, they're invalid for all time and the patentee can't assert those claims. And then Judge Moore asked me to assume that the follow-on claims are exactly identical, and Mr. Stallman testified he believed they were different and he pointed to those differences. But setting that aside for the moment, even Blundertung recognizes that there are circumstances in which a patentee would not be held to the prior judgment of invalidity. For example, the final element of collateral estoppel applied by Blundertung deals with fairness to apply the doctrine in a particular second case. And Blundertung recognized that one example in which it might not be fair to apply collateral estoppel in a follow-on case is when the first judgment addressed obviousness without applying the grant four-factor test. Now, one point raised on the merits by Zitronix in this case was the fact that Claim 7 of the 441 patent was anticipated by two references, a thermoprobe device and an all-premise 611 patent. But if you look at the judge's final judgment order that was submitted clearly to the patent office, what that shows is that the judge said, look, these references disclose the device and a person of ordinary skill in the art would know that you can use any wavelength range with those devices. What the judge did not find was that anybody had in fact ever used that wavelength range with the device or that the all-premise 611 patent in fact disclosed the claim wavelength range with that device. But if you disagree with the district court judge's conclusion, don't you have to appeal it to us? You can't collaterally attack it by submitting the same claims back to the patent office. I agree with that, and I don't believe that's what happened here. Another, to answer your question, I'll go back, Your Honor, one, looking at that particular fact finding in the 441 litigation, Claim 7 is not one of the claims that's been alleged to be similar to the claims of the 260 patent, and it was the only one that was anticipated. That being said, Claim 7 was also declared invalid in the 441 litigation for two additional reasons. One, the judge thought that it was indefinite because of the phrase substantially maximized and that it was obvious. And so looking at the restatement of judgments as treated by this court and the Supreme Court, it's hard to conclude that KLA had any incentive to appeal that anticipation finding out of that judgment when it would also have to overcome the hurdles of those other two invalidity findings. So I'm not saying that on the merits these claims would survive a court applying collateral estoppel to the validity of the 260 patent claims. The issue before the court on the merits is whether Mr. Stallman committed fraud and deceived the patent office into somehow concluding mistakenly that these claims are different or unpatentable. But there can be no dispute that Mr. Stallman went out of his way. Well, your time is about half over, and so I'd really like to move you on to jurisdiction. Why don't you understand the nature of what our concerns are, because you no doubt listened to the colloquy with opposing counsel. So why don't you explain to me why you think, after Gun v. Minton, we have jurisdiction over this case? Thank you, Your Honor. I'd like to turn to one of the concerns that Judge Hughes raised, and that was, are we arguing that every Walker process claim necessarily should be heard on appeal in this court? And I think that's not what Christensen said. It's not what the cases that we've cited in our supplemental briefing have said. The issue is whether the allegations as pled in the complaint necessarily require resolution of a substantial question of patent law. What's the substantial question of patent law that you think we have to decide? Under the laws governing the issuance and prosecution of patents before the patent office, whether those standards of candor— Which one? Okay, so you're basically saying fraud on the patent office is a patent law issue that we have to decide. Correct, and the way that— So you're making the conclusion then that the federal circuit doesn't have exclusive jurisdiction because Walker process is always based on fraud on the patent office. That's correct, Your Honor, but it is not the case that every antitrust claim necessarily requires— We're not talking about other antitrust claims. We're talking about Walker process antitrust claims and whether you think they're within the exclusive jurisdiction of the federal circuit. If that Walker process claim is the sole basis for relief in the complaint. So let me—you're not answering my question. Is there a Walker process antitrust claim standing alone that you think could go to a regional circuit on appeal? Not connected to any other non-Walker process antitrust claims. If it's a Walker process antitrust claim, does the appeal have to come to us? So if I could say— That's a yes or no question. Yes, with the caveat that Walker process is not in itself an antitrust claim, right? Walker process is one theory under which a patentee can be stripped of its protection from the antitrust laws and therefore based on that stripping behavior be found liable. Even if we don't have to decide validity or any other quintessential issue of patent law? Well, it's certainly— What you have to decide is whether you misled the patent office in a way that resulted in a patent being awarded. So I think it is the case that Zitronix has to demonstrate that the patent is invalid and should not have issued at all under the but-for causation element of a Walker process claim. And to back up a little bit and address more specifically why I don't believe that necessarily means that every Walker process claim should be in this court, if you look at Christensen as one— Why not? I mean, isn't that an element of the Walker process test? So if you think that the but-for element is a question of patent law, then every— I mean, it seems like that would help your argument. So—but I share the court's concern with reaching a conclusion— I don't really have a concern. If it's in our exclusive jurisdiction, it is. And if it's not, it's not. I just know that there are regional circuit court cases out there that say it's not within our exclusive thing, and I don't want to create a circuit conflict if I don't have to. And Gunby-Mitton certainly suggests that even when you're in the area of patent law and resolving questions that are circulating around it, as long as you don't have to decide the central issue, then it may not be within our exclusive jurisdiction. So the antitrust claims presented in this case are a Section 2 Sherman Act claim, a Section 10 Clayton Act claim, and I believe a Section 14 Clayton Act claim. And my client, KLA, has been accused of committing an antitrust violation under those statutes. In many cases where the regional circuits have heard Walker process issues on appeal, those claims under the antitrust laws have been paired with other theories to invalidity. But then they would be wrong, right? If there's one patent claim among the antitrust claims and other ones, then it still comes to us, does it not? I don't believe that's quite right, Your Honor. Wait, so if there's non-Walker process claims and there are Walker process claims, can they—do you just get to choose? They can go to the regional circuit. They can come to us because one of them arises under patent law, but another one doesn't. I mean, they only—if it arises under patent law, any part of the case, it comes to us, does it not? That last statement, I'd certainly agree with, Your Honor. So your other statement just now that if there's a Walker process claim and an antitrust claim, a non-Walker process antitrust claim, and it can go to the regional circuit, that's not right. So again, Your Honor, the issue that I have with your question that makes it difficult to answer is that Walker process is not itself an antitrust claim, right? It is one theory towards antitrust liability. I know I'm using it shorthand, but the theory of antitrust liability based upon Walker process always involves fraud on the patent office. That's correct. And so is it the case that if that theory of antitrust liability is invoked, then it has to come to us, even if there are other theories of antitrust liability in the case? So in that circumstance, I would say no. And it's the distinction between a theory and a claim. If every claim in a case necessarily depends on the resolution of the Walker process theory—let me restate that. If any claim in the case—it doesn't have to be every claim, one claim is obviously enough— if any claim in the case requires resolution of the Walker process theory to get to liability, then exclusive jurisdiction rests in this court. If a particular claim in the case could be decided on Walker process grounds, or it could be decided on non-Walker process grounds— That doesn't go to the regional circuit. I'm not trying to embarrass you. Quite the contrary. If you haven't read Gunn v. Minton, then we need to have a dialogue at a later time. Are you familiar with the case? Or did you come in here not familiar with it, and you're sort of just trying to pull it out? And I'm not trying to embarrass you. Nobody raised it in the briefing. So if you're not familiar with it, just tell me. Yes, Your Honor. You are familiar? I didn't raise it in the brief. But you're familiar with it? I'm not familiar. Yes, Your Honor, I understand your question. I'm not trying to embarrass you. I understand. So here, what I would like to ask, since you're not— because I want to ask you specific questions about why this isn't exactly like Gunn v. Minton. And I've noticed in your responses to Judge Hughes, you sort of avoid discussing Gunn v. Minton. Don't be embarrassed. We're bringing up a case that nobody raised about jurisdiction, a question nobody raised. So if you're not familiar with it, that's fine. And then what I'd like to ask both parties to do, as long as my colleagues are amenable, is to submit a letter of brief limited to, say, three pages by Friday that addresses Gunn v. Minton in particular. Is that okay? Yes, Your Honor. Because I don't want you to feel like you did your client a disservice because you couldn't address specific questions on the point. Because I will tell you, I think Gunn v. Minton controls in this case. So you've got a hurdle to overcome. So why don't we just let you do that? Is there anything else you want to offer? Three pages, single-spaced. No, I think the page limit's fine. It's one case I can address it in that. That's no problem. Can you move me off of the merits? Yeah, we're not going to go back to that because your time is up. That's fine. Okay. Thank you, Your Honor. Yep. You have no objection to additional briefing? No objection. Your Honor, is my time up as well? Come on up. We'll give you two minutes of rebuttal time. Go ahead. So long as we're going to reserve the Gunn v. Minton, I'll keep it brief then because it sounds like with respect to the merits, this court is appreciative of the Walker process claims that we have asserted and that we're trying to pursue. And those have to do with the fact that the failure to appeal constitutes a misrepresentation to the PTO. You know, we've gone through, and I think this court's familiar with the acts that we've alleged as fraud. Let me ask you this. If the examiner, when he got all these or she got all of these documents, was aware of this judgment, was aware that all the new claims that were being pursued were already found invalid and went ahead and just issued them anyway,  I think it is under these circumstances, Your Honor. Where's the misrepresentation? That but-for resulted in the patent issuing. There it seems that the but-for resulting in the patent is the examiner ignoring the district court, not relying on a misrepresentation. Misrepresentation, Your Honor, is very simple. With respect to the fact that once the 441 patent was declared invalid and it was not appealed, KLA had no good faith basis to continue the prosecution of a claim that they knew to be invalid. So to the extent that they maintained the case without amending it to cure the reasons that rendered it invalid, they're representing to the PTO that this patent can be validated when we all know that the PTO is not authorized to issue an invalid patent, which it would have been. Let me make the hypothetical a little bit more clear. Suppose they send in this IDS and say, claims identical to these have already been declared invalid. We have no additional arguments for their validity, but you should still issue them. Then that would be a-that's a different scenario. That's not a misrepresentation. That's inviting the PTO to exceed its authority, but it's not a misrepresentation. Well, I think that it would be a fraudulent act to even take that step when they have a duty not to pursue a claim that they know to be invalid. They can't ask the PTO to issue a claim, to issue a patent, that they know is invalid. That's the fear that is discussed in all the cases about we're going to perpetuate the litigation of invalid claims, blunder tongue in the cases that cited that come after. The entire point of bringing resolution to this is to bring closure. So KLA, so Zitronix is not litigating this in the 441 in 2008, and then the 260 in 2011, and then perpetuity. Thank you. Thank both counsel, and we will receive your letter brief by 5 o'clock Friday, no later.